Jessee E. SWANNER; Wilma S. Swanner; Jacqueline Ann Gibson, a minor three years of age, who sues by and through Jack Gibson, her father and next friend; Susan Renee Gibson, a minor two years of age, who sues by and through Jack Gibson, her father and next friend, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2517-N.

United States District Court, M. D. Alabama, N. D.

Jan. 26, 1970.

 

William A. Oldacre, Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., for plaintiffs.

Macon L. Weaver and E. Ray Acton, Spec. Asst. U. S. Attys., Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHNSON, Chief Judge.

This case was commenced pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, by the above-named plaintiffs seeking to recover damages for personal injuries and property damage sustained in an explosion of a dwelling house which they were occupying. This is the second time this case has been before this Court, a judgment for the defendant having been rendered November 21, 1967. Swanner v. United States, 275 F. Supp. 1007. This judgment was reversed and the case remanded to this Court for a new trial by the United States Court of Appeals for the Fifth Circuit. Swanner v. United States, 406 F.2d 716 (1969). In reversing the judgment of this Court, the Court of Appeals stated that the plaintiffs had been "held to a standard of proof stricter than that of a preponderance of the evidence." Upon remand of this case to this Court the matter was set for a hearing upon both the issue of liability and the issue of damages.

This Court, having considered the evidence presented at the second trial and the testimony of the first trial that was admitted and considered upon this submission by agreement of counsel, now makes the appropriate findings of fact and conclusions of law. The findings of fact entered in the first order of this Court are adopted with some changes as hereinafter set out; these changes primarily concern the question of proximate cause. The evidence presented upon the second trial was not substantially different from that presented upon the first trial. In this Court's first decision it was held that the Unit-

ed States had a duty to protect Jessee E. Swanner and the members of his family and that it had negligently breached that duty. A condensed version of the facts, set out more specifically in the first opinion of this Court, reflects that on April 22, 1966, a bomb exploded under the house that was occupied by the four plaintiffs. This bomb demolished one side of the house, damaged and destroyed the furniture in the house, and injured all four of the plaintiffs. Plaintiff Jessee E. Swanner had been for some time prior to the explosion employed by the Alcohol and Tobacco Tax Division of the Internal Revenue Service as a "special employee" to aid in the undercover investigation of illicit whiskey operations in Giles County, Tennessee. As a result of information developed in that investigation, indictments were returned against several persons in and around Giles County, Tennessee, including one Ed McGlocklin. Swanner had testified against two persons accused of violations of the Internal Revenue Laws and had been scheduled to give testimony before a federal grand jury that was to convene in Tennessee in the spring of 1966. This grand jury was to investigate the Giles County illicit whiskey operation that had been headed by Ed McGlocklin.

Plaintiffs' action against the United States is on the theory that the government negligently breached its duty to protect plaintiff Jessee E. Swanner and his family and that the government, through its agents, had heedlessly imparted to Swanner a false impression of safety and lack of danger. The evidence is without conflict concerning McGlocklin's general reputation for and his history of being a person of violence. On at least one occasion prior to his discovering Swanner's relation with the United States, McGlocklin, in the presence of Swanner and another government undercover agent, stated that he would kill anyone who informed the authorities of his operations. After discovering Swanner was an undercover agent, McGlocklin, with knowledge that

Swanner was residing in the Montgomery, Alabama, area, stated that Swanner would never testify against him. This threat was indirectly communicated to Swanner in April 1965.

The United States, through the agents of the Alcohol and Tobacco Tax Division of the Internal Revenue Service, had knowledge not only of the generally dangerous nature of undercover work, but also of threats made concerning informers generally and Swanner specifically prior to the bombing of the house in Montgomery, Alabama. Immediately after learning of the threat made by McGlocklin, Swanner called Agent Keathley, the agent in charge of the Nashville, Tennessee, office of the Alcohol and Tobacco Tax Division of the Internal Revenue Service. Upon learning from Keathley that McGlocklin was at large and being sought for the purposes of arrest and prosecution, Swanner volunteered to return to Tennessee to act as a decoy to aid in the apprehension of McGlocklin. He was advised not to take this course, that he would be safe from McGlocklin as long as he remained in Alabama. Swanner also called Thomas Allison, the agent in charge of the Montgomery office of the Alcohol and Tobacco Tax Division of the Internal Revenue Service. Allison also advised him that in his judgment he was safe from McGlocklin as long as he remained in Alabama. Swanner made no specific request for protection and was without any protection from any agency of either the state or federal government at the time of the bombing of his house.

Jacqueline Ann Gibson and Susan Renee Gibson, granddaughters of plaintiffs Jessee E. Swanner and Wilma S. Swanner, each claim, separately, through their father and next friend, monetary damages for personal injuries received in the explosion. At the time of the explosion, each of the girls was asleep with one of her grandparents in separate rooms of the house. Their injuries consisted of superficial cuts, scratches and bruises. Jacqueline Ann Gibson has exhibited some evidence of nervousness

since the bombing; however, according to the evidence, this is not serious or permanent.

Mrs. Wilma S. Swanner was the most seriously injured of the plaintiffs. She claims monetary damages for permanent personal injuries and the incidental medical expenses. As a result of a serious fracture of the pelvis, she required hospitalization for a period of three weeks and further bed rest at home. When she became ambulatory, she could not walk without the assistance of crutches for a period of some six months. As a result of a severe laceration, which penetrated her left cheek and caused her to lose three teeth, she now has a facial scar on the left cheek and a twitch on the left side of her face, which, according to the neurosurgeon, is aggravated by stress. She continues to suffer from headaches and to be subjected to blackout spells, which, according to the medical evidence, are related to "petit mal" convulsive disorders. Mrs. Swanner also has scars from lacerations on her chin and legs.

Jessee E. Swanner claims monetary damages for personal injuries, loss of services of his wife, and damages to personal property. The personal property damage was to furniture and other household goods of the value of approximately $1,500, which were destroyed or damaged beyond repair as a result of the explosion. His personal injuries in the explosion proper consisted of minor cuts, scratches and bruises. He suffered cuts of both feet and both hands in an attempt to extricate his wife from the rubble. Prior to the incident, Mrs. Swanner was able to do all her household work without assistance. Since she can no longer do this work, Mr. Swanner either has to do the work himself or has to employ outside help. Mr. Swanner has incurred medical and hospital expenses of approximately $2,500 in the care and treatment of his wife's injuries.[1]

This Court has jurisdiction of parties and subject matter of this action. 28 U.S.C. § 1346(b). It is without dispute that the United States may be liable under the Federal Tort Claims Act for its failure to provide police protection where, as here, the decision not to provide such protection is made by an agent or agents of the United States acting within the line and scope of his or their employment. The failure to provide protection in this case was not a decision made in the exercise of a discretionary function within the meaning of 28 U.S.C. § 2680(a). Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354; United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805; and Cohen v. United States, D.C., 252 F.Supp. 679. More specifically, this Court now concludes that the United States owed a special duty to use reasonable care for the protection of Jessee Swanner and the members of his household. This conclusion is based upon the evidence that reflects that Swanner had collaborated and assisted the government in the arrest and the prosecution of criminals and that it had reasonably appeared to the agents of the United States that Swanner, and possibly the members of his household, was endangered due to this collaboration and assistance. The law is clear that whenever there is reasonable cause to believe that a government agent or employee, or any member of his family, is endangered as a result of the performance of his duty to the government, a duty on the part of the government to protect him and the members of his family arises. This duty arises without the necessity for a formal request on the part of the person or persons endangered. It arises upon the communication to the government of facts which would create a reasonable belief that a government employee, or his family, is endangered as a result of the performance of duty, and it

1. The evidence reflects that Jessee E. Swanner has either paid or become obligated to pay the medical, hospital and doctors' expenses for the care and treatment of his wife's injuries. The award to be made for these items of damage will therefore be to Jessee E. Swanner and not to his wife, Wilma.

is immaterial whether the information is received directly from those endangered or from some other source. Schuster v. City of New York, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 145 N.E.2d 534 (1958). See also Fair v. United States, 234 F.2d 288 (5th Cir. 1956). As was stated in the case of In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080:

"The right of a citizen informing of a violation of law, like the right of a prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the amendments to the constitution, but arises as out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action. * * *"

The duty of the United States is not distinguishable in this case because Swanner was a "special employee" of the government who received compensation for the information he supplied. United States v. Mathews, 173 U.S. 381, 19 S.Ct. 413, 43 L.Ed. 738.

■■■ As in any case based upon negligence, cases under the Federal Tort Claims Act place the burden on the plaintiff to prove not only that the government was negligent, Ray v. United States, 228 F.2d 574 (5th Cir. 1956), cert. denied 351 U.S. 968, 76 S.Ct. 1034, 100 L.Ed. 1487, but also that such negligence was the proximate cause of the injuries complained of. United States v. Inmon, 205 F.2d 681 (5th Cir. 1953). This Court now finds that it is more probable than not that the plaintiffs were injured as a result of the negligence of the United States in not providing police protection for Jessee Swanner and the members of his family and that the United States is therefore liable to these plaintiffs. The absence of any evidence placing McGlocklin or any of his associates in or near Montgomery on or about the date of the bombing is not dispositive of the issue of proximate cause. The United States has failed to adduce any evidence to support an alternative theory which is more plausible than the theory put forward by the plaintiffs. The bombing here occurred not long after the threat to Swanner and shortly before the date that had been originally scheduled for the grand jury proceedings at which it was thought that Swanner was to testify against McGlocklin and his associates. This Court recognizes that the burden of proof does not shift to the government when the question becomes one of proving a negative; however, the Montgomery Police Department and the Alcohol and Tobacco Tax organization have been unable to develop any evidence to support any theory as to who set the bomb. The plaintiffs here are not required to prove their case beyond a reasonable doubt. They need not negative entirely the possibility that the defendant's conduct was not the cause. It is generally recognized that it is enough that the plaintiff introduce evidence from which reasonable men may conclude:

"* * * that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists." Prosser, Handbook of Law of Torts, 3rd Ed., Hornbook Series, Sec. 41, p. 245, et seq.

The philosophy of the Alabama courts on the question of proximate cause is set out in Alabama Power Company v. Guy, 281 Ala. 583, 206 So.2d 594. This philosophy is generally to the effect that a

person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all of the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. The Alabama court continued:

"In line with our decisions on this subject is the statement: 'As regards proximate cause * * * the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance that happened. Accordingly, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the particular consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, although not the necessary and inevitable, result of the negligent fault—such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question.'"

Professor Wigmore even suggests that under the circumstances of a case such as is now before this Court a legal presumption arises:

"When one threatens to do an injury to another, and that or a similar injury afterwards happens, this furnishes ground to presume that he who threatened the fact was the perpetrator or instigator." 1 Wigmore on Evidence, 3rd Ed., Sec. 105, p. 538.

In short, this Court now concludes that the plaintiffs have, to use the words of the Appellate Court that remanded this case for a new trial, proved each and every element of their case by "a preponderance of the evidence."

 Upon consideration of the foregoing findings and conclusions, this Court now further concludes that each of the plaintiffs is entitled to be compensated for the injuries and damages

sustained as a proximate consequence of the negligence of the United States in failing to provide protection to plaintiff Jessee E. Swanner and to the members of his family and household. For his personal injuries, for the destruction and damage to his household goods, both new and used, for the medical and hospital expenses incurred in the care and treatment of his wife's injuries and for the loss of the services of his wife, this Court finds that plaintiff Jessee E. Swanner is entitled to be compensated in the amount of $5,000; that Susan Renee Gibson is entitled to be compensated in the amount of $250; and that Jacqueline Ann Gibson is entitled to be compensated in the amount of $750. For the permanent personal injuries sustained by Wilma S. Swanner, this Court finds that she is entitled to be compensated therefor by a judgment in the amount of $22,500. A formal judgment will be entered accordingly.