Alexander F. Barbieri, Individually and acting in his official capacity as the Court Administrator of Pennsylvania, Petitioner *v.* Milton J. Shapp, Governor of the Commonwealth of Pennsylvania, et al., Respondents.

Argued April 6, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Jonathan Vipond, III,* with him *Eve L. Cutler,* for petitioner.

596

*Vincent X. Yakowicz,* Solicitor General, with him *Melvin R. Shuster,* Deputy Attorney General, *Alan M. Bredt,* Deputy Attorney General, *Gerald Gornish,* Deputy Attorney General, *Robert P. Kane,* Attorney General, and *Lawrence J. Beaser,* Counsel to the Governor, for respondents.

OPINION BY PRESIDENT JUDGE BOWMAN, April 22, 1977:

By petition for review in the nature of a complaint in equity and for declaratory judgment filed March 2, 1977, the Court Administrator of Pennsylvania seeks a declaration by this Court with appropriate relief that four identified judicial offices should be filled by the elective process in this year 1977 and not by the appointive process inasmuch as the incumbents during this year will attain the age of seventy years thereby creating vacancies in these judicial offices.

Petitioner would have us conclude that Article V, Section 10, of the Pennsylvania Constitution, as applied to the facts, requires such a result.

The matter is before us on respondents' motion for judgment on the pleadings,[1] an accelerated briefing

---

[1] By way of new matter in their answer to the petition for review, respondents raise issues of (1) petitioner's standing to sue either as an individual or as the Court Administrator, (2) failure to state a cause of action in declaratory judgment for want of an actual controversy or antagonistic positions between the parties, (3) the existence of an adequate remedy at law in mandamus to a person aggrieved as provided by Section 976 of the Pennsylvania Election Code, 25 P.S. §2936, and (4) laches. Respondents thereafter filed their motion for judgment on the pleadings pursuant to Pa. R.C.P. No. 1034. Such a motion is considered to be a supplementary demurrer to the record as constituted by the pleadings and affords broad power to the Court in ruling on the motion. Because of the transcending importance of this case to the proper and efficient administration of the judicial system of Pennsylvania, we decide this case on the basic constitutional issue involved, notwithstanding the possible merits of the several issues raised in respondents' new matter.

schedule and an advancement of argument. The facts are not in dispute. Four judges of various courts of common pleas presently serving their offices will each attain the age of seventy years between now and the forthcoming municipal election of November 8, 1977. These judges are: Hon. ALEXANDER F. BAR-BIERI, 1st Judicial District (Philadelphia County), elected to serve a term of office expiring the first Monday of January 1984; Hon. LAWRENCE A. MONROE, 7th Judicial District (Bucks County), elected to serve a term of office expiring the first Monday of January 1982; Hon. J. QUINT SALMON, 36th Judicial District (Beaver County), elected to serve a term of office expiring the first Monday of January 1982; and Hon. ALBERT H. HEIMBACH, 56th Judicial District (Carbon County), elected to serve a term of office expiring the first Monday of January 1980.

The elective process as prescribed by the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2600 et seq., for the municipal election year 1977, provides for these significant events and dates:

February 15, 1977—Last day for the Secretary of the Commonwealth to send to county boards of election written notice designating the public offices for which candidates are to be nominated at the primary;

February 15, 1977—First day to circulate nomination petitions and to file such petitions;

March 8, 1977—Last day to file nomination petitions;

May 17, 1977—The date of the primary;

November 8, 1977—The date of the municipal election.

The Secretary of the Commonwealth has not certified these offices as public offices for which candidates are to be nominated at the primary, and no

person has sought to file nomination petitions for any of these judicial offices.

Bearing upon the issues raised are the following provisions of our Constitution found in Article V pertaining to the Judiciary:

§13. Election of justices, judges and justices of the peace; vacancies.

(a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. The person so appointed shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs.

. . . .

§15. Tenure of justices, judges and justices of the peace.

(a) The regular term of office of justices and judges shall be ten years. . . .

. . . .

§16. Compensation and retirement of justices, judges and justices of the peace.

. . . .

(b) Justices, judges and justices of the peace shall be retired upon attaining the age of 70 years.

One or more of these provisions have been the subject of a number of decisions of this Court and the Supreme Court of Pennsylvania. Most recently, the Supreme Court in *Berardocco v. Colden,* —— Pa. ——, 366 A.2d 574 (1976), a quo warranto proceedings, held that the elective process of Section 13(a) controlled the filling of a vacancy occasioned by the resignation of an incumbent justice of the peace during the last year of his elected term of office and which office had been certified by the Secretary of the Commonwealth as one to be filled by the elective process that same year. The Supreme Court framed the issue and concluded as follows:

> The question presented is whether the 'ten month' provision of section 13(b) operates when the normal electoral process of judicial selection, as provided in section 13(a), has been triggered by the anticipated expiration of the incumbent's term. We hold that it does not.
>
> . . . .
>
> . . . [C]onsistent with section 13(a), the 'ten month' provision of section 13(b) does not apply when, as here, the *normal election process* for judicial office has commenced, even if the vacancy occurs less than ten months prior to the next election. In that event the appointment may be only for a *term equivalent to what would have been the remainder of the previous term.*

—— Pa. at ——, 366 A.2d at 576-77. (Emphasis added.)

In *DiNubile v. Kent,* 19 Pa. Commonwealth Ct. 438, 338 A.2d 722 (1975), *aff'd,* 466 Pa. 572, 353 A.2d 839 (1976), and *Firing v. Kephart,* 18 Pa. Commonwealth Ct. 578, 336 A.2d 470 (1975), *aff'd,* 466 Pa. 560, 353 A.2d 833 (1976), we held that when a judge

or justice of the peace attains the age of seventy years and must retire under the mandate of Article V, Section 16, their entitlement to compensation also terminates, notwithstanding other language of Section 16 that their compensation shall not be diminished "during their terms of office." In this context, we held that their "terms of office" ended upon attaining seventy years of age.

Pointing to these decisions as persuasive authority, petitioner contends that the elective process, which should be preferred over the appointive process, is operative in those cases in which an incumbent judge will attain seventy years of age during a municipal election year and whose elected term of office will not expire until a later year. Petitioner bottoms this argument upon the *certainty* of the disqualification to serve the balance of the elected term of office by reason of a judge attaining seventy years of age during a municipal election year.

We disagree. In our opinion, Article V, Section 13, of our Constitution addresses itself to the question of whether the elective process or appointive process shall be operative by establishing two mutually exclusive categories. Recognizing that the *regular* term of office of a judge is ten years, also characterized as the "elected" or "fixed" term of office, Section 13(a) addresses itself to the method of the selection of judges for their regular ten year term of office by providing that they shall be elected at the municipal election next preceding their term of office. This provision, as does Section 15(b) providing for retention election, contemplates the continuation of an incumbent in the office of judge to the end of a regular term or an appointive term and the beginning of the regular term of his successor. It foresees only the certainty of the expiration of a regular term or an appointive term of office and

mandates that the successor be selected by the partisan elective process or the retention elective process. It does not address itself to vacancies in office, foreseeable or otherwise.

Section 13(b) addresses itself to the method of selection of judges to fill vacancies, that is, those situations in which an incumbent before the expiration of his regular term of office, resigns, dies, is disqualified or, in our opinion, is required to retire upon attaining the age of seventy years by reason of Section 16. Such judges, notwithstanding their mandated retirement during their regular term of office, are, nevertheless, elected to a ten year term and their retirement, however foreseeable and certain to occur, creates a vacancy at that time, the very category to which Section 13(b) addresses itself. On that date, there is a vacancy because the incumbent has retired, there is no incumbent. Simply because such a vacancy may be foreseeable during a municipal election year, does not make it any less a vacancy that has not yet occurred. Nor is it logical to assume that such vacancies which will occur during a municipal election year are a different kind of "vacancy" than vacancies by reason of mandatory retirement which occur in a general election year. Petitioner would have us find such a difference in the somewhat lengthy term of appointive office which would be the product of the other interpretation and by pointing out that the elective process is preferred to the appointive process as expressed in *Berardocco, supra*. The long-standing adherence to the principle that the Constitution is entitled to a construction, as nearly as may be, in accordance with the intent of its makers, *Commonwealth ex rel. Attorney General v. Beamish*, 309 Pa. 510, 164 A. 615 (1932), does not lend itself to concluding that they intended vacancies occurring by reason of age during an incumbent's regular term

of office to be treated differently simply because some will occur in a municipal election year while others will occur in a general election year. We can attribute no such intent to the provisions of Section 13(b).[2]

ORDER

Now, April 22, 1977, respondents' motion for judgment on the pleadings is granted and judgment is hereby entered in favor of respondents.

---

[2] We would note in this case that the full elective process cannot be fulfilled in any event as the time for nomination of candidates through the nomination petition process has already passed and the primary looms in the near future with time factors pressing upon the alternative methods of selecting primary candidates and the primary itself.

---

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent. In my opinion, Section 13(a) of Article V of the Pennsylvania Constitution unambiguously requires that judicial offices in Pennsylvania be filled by persons who are elected and that such persons "be elected at the municipal election next preceding the commencement of their respective terms." Moreover, our Supreme Court clearly indicated in *Berardocco v. Colden,* —— Pa. ——, ——, 366 A.2d 574, 577 (1976), that the purpose of *all* of the provisions of Section 13 of Article V is to insure that whenever possible judicial officers shall be elected by a complete electoral process. I believe that the holding of the majority here frustrates that purpose.

The appointive process prescribed in Section 13(b) of Article V is intended to fill a judicial vacancy only until the office can be filled by a popularly elected officer and that process is not intended to supersede the electoral process mandated in Section 13(a). It is applicable when a judicial vacancy occurs due to

an unforeseen circumstance which cannot be calculated to occur on a date certain, which is not the case here, for all of the judicial officers involved in this case were originally elected or retained after their sixtieth birthdays. And, under the mandatory retirement provisions of Section 16(b) of Article V and our holding in *DiNubile v. Kent,* 19 Pa. Commonwealth Ct. 438, 338 A.2d 722 (1975), *aff'd* 466 Pa. 572, 353 A.2d 839 (1976), and *Firing v. Kephart,* 18 Pa. Commonwealth Ct. 578, 336 A.2d 470 (1975), *aff'd* 466 Pa. 560, 353 A.2d 833 (1976), the terms to which these individuals were then elected or retained were consequently limited so as to expire on the dates of their seventieth birthdays, dates in every case which were certain and capable of simple calculation. In these and similar circumstances, I believe that the constitutional purpose can be served only by the commencement of the electoral process early enough to fill the positions concerned at the municipal election closest to the anticipated date of retirement. In this case, therefore, the vacancies should be filled at the November 8, 1977 municipal election.