## Berlin v. Drexel University

*Milton S. Lazaroff*, for plaintiff.
*Gabriel L. Bevilacque*, for City of Philadelphia.
*Joseph F. Foster*, for defendant Drexel.

TAKIFF, *J.*, April 26, 1979—The pending motion for judgment on the pleadings pursuant to Pa.R.C.P. 1034 was filed by the City of Philadelphia (City), additional defendant in this litigation. The genesis of this civil action was a criminal assault on plaintiff, Jerald Berlin, which occurred while he was a student at Drexel University (Drexel). Berlin was shot in the left thigh by an unknown assailant while walking from the rear of his fraternity house to a garage the evening of October 14, 1973. The theory of liability upon which suit was subsequently brought against Drexel was the claimed failure to provide its students with a safe environment and for inviting them to live in a "high crime area." Drexel thereafter joined as additional defendants Burns Security Services (Burns) for alleged breach of its contractual duty to provide campus security, and the City, for alleged breach of its duty to provide police protection and to prevent criminal activity.

The City demurred to its joinder, contending that a municipality's duty to afford police protection is to the public at large and is not enforceable by individual citizens. That preliminary matter was ruled on by Chalfin, *J.*, who dismissed the objection, without opinion.

In the ensuing three years since that ruling no further pleadings as to the City or Drexel have been filed. Hence, by its present motion for judgment on the pleadings, the City has resubmitted its "no duty" contention in precisely the same pleading posture as when previously ruled. Only Drexel has resisted this motion.

As a prefatory matter we must query the propriety of presently considering the identical pleadings, albeit at a later date and in the context of a nominally different motion. A motion for judgment on the pleadings is essentially a belated demurrer, designed to permit an overall examination of the pleadings to determine whether judgment should be entered prior to trial: Barbieri v. Shapp, 29 Pa. Commonwealth Ct. 594, 372 A. 2d 939 (1977). In the context of a different proceeding with substantive differences in effect, it is proper to consider a motion for judgment even though a prior demurrer was dismissed. In Overbrook Farms Club v. Mac-Coy, 32 D. & C. 2d 603 (1963), defendants had first demurred to a complaint, asserting a statute of frauds bar to suit. The demurrer was overruled, expressly on procedural grounds, without prejudice to defendants' right to answer on the merits and move for judgment on the pleadings after plaintiff's reply. Addressing the subsequent motion for judgment the court reasoned, "'[T]he fact that the defendant did file a demurrer which was dismissed does not bar him from filing a motion for judgment on the pleadings after the plaintiff has filed his

reply if the record as it then stands warrants such relief.'" Id. at 609, quoting 2B Anderson Pa.Civ.Prac. §1034.4.

In Pennsylvania State Chamber of Commerce v. Hart, 45 D. & C. 2d 352 (1968), a demurrer to a complaint in equity requiring an interpretation of the Unemployment Compensation Law had been dismissed. The court's accompanying opinion had disposed of the only substantive question of law. Defendants' answer was filed thereafter, admitting all the material facts of the complaint. Plaintiff later moved for judgment on the pleadings. Argument was made to the court in which defendants urged the court to reverse its earlier opinion. In granting the motion for judgment, Judge Bowman opined: "We have considered the defendants' arguments which are essentially restatements of arguments previously advanced and which do not persuade us to change our previously expressed opinion." Id. at 353. Discernible from this opinion is the principle that although the court refused to reverse its prior ruling, it did not consider itself precluded from reevaluating the same legal contentions in the context of a different motion.

Also distinguishable from the instant matter are cases in which a dismissed demurrer is followed by another attack directed against the sufficiency of the initiating pleading. Such was the situation presented in Dunn v. Orloff, 414 Pa. 636, 201 A. 2d 432 (1964). There, a confessed judgment had been opened over plaintiff's opposition, from which no appeal was taken. Nevertheless, plaintiff later moved for judgment on the pleadings. The dismissal of that motion was then appealed. The Supreme Court noted that the sole impact of the motion for

judgment on the pleadings was to request the court below to reconsider its prior determination that the judgment should be opened and the parties proceed to trial. This collateral attack on the lower court's prior determination was denied in light of the identity of issues and pleadings before the court, and *especially* because no appeal was taken from the order to open judgment, which was final and appealable.

The dismissal of the demurrer in the instant case was an interlocutory order, and thus non-appealable: Newkirk v. Phila. School District, 437 Pa. 114, 261 A. 2d 305 (1970); Philadelphia v. William Penn Business Institute, 423 Pa. 490, 223 A. 2d 850 (1966); 2401 Pennsylvania Avenue Corporation v. Southland Corporation, 236 Pa. Superior Ct. 102, 344 A. 2d 582 (1975). Because the cause of action asserted against the City introduced an issue that we conclude to be of first impression in Pennsylvania, we view the earlier dismissal of the demurrer as an appropriate reluctance on the part of the motion judge to preclude a further development of justiciably adequate factual or legal issues at a subsequent stage of the pleadings. Notwithstanding the absence of additional pleadings, the present posture of the case is that the issues have been framed by the parties as fully as they desire. And hence we are presently prepared to confront the legal issue posed by this motion for judgment on the pleadings.

There are no disputed issues of fact which would obstruct consideration of this motion for judgment on the pleadings. The complaint filed by Drexel against the City avers the conclusionary "duty to protect members of the public, a class of which the

plaintiff at all times relevant was a member" and, if there was negligence in failing to prevent the shooting of the plaintiff, it was the City's negligence in violation of the duty asserted (Paragraph 4 of Drexel complaint). By reference Drexel incorporates earlier averments of plaintiff's complaint against it, as being applicable to the City, which alleged (Paragraph 10) that the shooting occurred "in a high crime area" where it was known or should have been known that there was a strong likelihood of criminal assaults; failure to adequately secure and patrol; failure to install adequate lighting and failure to warn plaintiff of the dangers and hazards of walking alone in the area. The appropriate utilization of this motion is to determine whether, on the pleadings, and conceding the averments asserted in support of the legal duty claimed, it would be a fruitless exercise to proceed to trial because no relief is available for breach of the claimed duty: Keil v. Good, 467 Pa. 317, 356 A. 2d 768 (1976); Wade v. Heisey, 243 Pa. Superior Ct. 8, 364 A. 2d 423 (1976). Certainly this court's prior ruling on the demurrer would not be an effective bar from granting a compulsory non-suit as to this additional defendant if the matter were tried: Sargeant v. Ayers, 358 Pa. 393, 57 A. 2d 881 (1948). Because of our determination that a trial on the issue as framed would be a nullity as to the City, we conclude that our consideration of the motion now before us is appropriate.

The tort liability of a municipality for failure to provide police protection from crime is an issue previously encountered in Pennsylvania only in juxtaposition with the doctrine of governmental immunity, which rendered superfluous any consideration of the legal issue as to liability. That

doctrine, which had resulted in the peremptory dismissal of trespass actions against governmental units, was abrogated in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), but was partially reinstated through the Political Subdivision Tort Claims Act of November 26, 1978, P.L. 1399, 53 P.S. §5311.102 et seq., effective January, 1979. We have no controlling precedent on whether the theory of liability here advanced is cognizable in the interim period in which no immunity existed.

That the City of Philadelphia, through its police department, has a general duty to provide police protection is clear:

"The Police Department shall have the power and its duty shall be to perform the following functions: (A) Law Enforcement. It shall preserve the public peace, prevent and detect crime, police the streets and highways and enforce traffic statutes, ordinances and regulations relating thereto. The Department shall at all times aid in the administration and enforcement within the City of the statutes of the Commonwealth of Pennsylvania and the ordinances of the City." 351 Pa. Code §5.5-200 (Philadelphia Home Rule Charter, Police Department).

While breach of a legislative standard of conduct may under certain circumstances indicate negligence per se, such a standard is not generally imposed with respect to duties which run to the public of which class the claimant is a member. The Restatement, 2d, Torts, §288, sets forth:

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regula-

tion whose purpose is found to be exclusively (a) to protect the interests of the state or any subdivision of it as such, or (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public . . . " However, preliminary to the consideration of any standard of conduct is the inquiry as to the existence of any duty, for breach of which the standard of care is claimed. Hence, it becomes pertinent to determine whether the duty of the police in law enforcement runs exclusively to the public or also encompasses within its scope individual members of the public. The consensus among the states which have litigated the issue is that in the absence of a special relationship between the municipality and the uniquely affected individual, no duty enforceable by the individual exists. See, Annotation, 46 A.L.R. 3d 1084; 57 Am. Jur. 2d, Municipal, School, and State Tort Liability, §§243 et seq.

The leading commentators concur that the difference between public and private duties owed citizens by the police governs the municipality's exposure to liability:

"The rule of official responsibility appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, then, a failure to perform it, or an inadequate or erroneous performance, must be a public not an individual injury, and must be redressed, if at all, in some form of public prosecution. . . . The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of

its non-performance." 2 Cooley on Torts §300, at 385-86 (4th ed. 1932).

Particularly apropos to the public duties involved in the instant case is McQuillin's analysis:

"The rule, that a municipality is not liable for mere nonfeasance of police officers in the performance of governmental duties, obtains generally even in those states in which the municipality is not immune from liability for the torts of such officers. And, in the absence of other circumstances sufficient to indicate negligence, failure to provide police protection, or adequate protection, or failure to perform any given governmental act or duty, will not impose liability upon the municipality, even though a statute or judicial ruling has abrogated the municipal immunity for the torts of policemen." 18 McQuillin, Municipal Liability for Torts, §53.80.

Illustrative of the growing body of case law applying these principles is Massengill v. Yuma County, 104 Ariz. 518, 456 P. 2d 376 (1969). In that case the dismissal of a complaint alleging failure of a police officer to apprehend and arrest an intoxicated motorist before he became involved in an accident, was sustained. Fearing the staggering potential liability that extending the obligations of public officers to each member of the public would impose, the court there reiterated the general rule that public prosecution must be the remedy for nonfeasance or misfeasance of a public duty.

On substantially identical facts, a Florida court refused to acknowledge a viable cause of action in Evett v. City of Inverness, 224 So. 2d 365 (Fla. App. 1969). The same result obtained in Henderson v. St. Petersburg, 247 So. 2d 23 (Fla. App. 1971), even

though the victim of an assault alleged that he was assured by the police department that he would be protected as he made deliveries in a dark and secluded neighborhood.

Despite the existence of a statutory duty of the police force to "preserve peace; prevent crime; detect and arrest offenders," a claim that the police department's failure to halt a crime wave forced plaintiff out of business was not sustainable in Simpson's Food Fair, Inc. v. City of Evansville, 149 Ind. App. 387, 394, 272 N.E. 2d 871 (1971). The court refused to hold governmental units "absolutely liable" for any and all acts or omissions which might cause damage or injury to private citizens, declaring, "We will not impose upon government the obligation to *guarantee* and *assure* the health, wealth and happiness of every living person." 272 N.E. 2d at 876 (emphasis in original).

Where a member of the public has been exposed to special danger, however, and the authorities have undertaken the responsibility to provide adequate protection, breach of that duty may be liability creating. Such special relationships have been recognized in Swanner v. United States, 309 F. Supp. 1183 (M.D. Ala. 1970), in which an undercover agent was held to be a "special employe" to whom the government owed a duty of protection; in Gardner v. Village of Chicago Ridge, 71 Ill. App. 2d 373, 219 N.E. 2d 147 (1966), in which a prosecution witness was entitled to special protection; and Schuster v. New York, 5 N.Y. 2d 75, 180 N.Y.S. 2d 265, 154 N.E. 2d 534 (1958), in which a police informant was found entitled to additional protection.

In the instant matter, however, no special circumstances creating a duty from the municipality

to the plaintiff as a private individual are present or have been pleaded. Nor is there any element of foreseeability of harm to this particular victim or from the particular source of harm to this individual or any other identifiable member of the public. It is manifestly unreasonable to require the City to prevent any criminal act against any member of the public at large so as to raise the burden of care to the level of an insurer of safety against the criminal conduct of anonymous third parties.

This seeming void in our social fabric is not without recognition and recent efforts to alleviate the consequences of anti-social behavior have been made. The plight of innocent victims of violent crime is one which has evoked legislative response in a growing number of states. See Annotation, 32 A.L.R. 3d 1446. Pennsylvania's Crime Victim's Compensation Board was established in 1976 to alleviate the financial losses of the innocent victims of crime or their surviving dependents under certain circumstances: Act of July 9, 1976, P.L. 574, as amended, 71 P.S. §180-7 et seq. Unfortunately for plaintiff in this action, no claims are accepted for crimes which occurred prior to the effective date of the act. We regrettably cannot substitute by judicial fiat the legislative relief which was not available to plaintiff when he was assaulted.

ORDER

And now, April 26, 1979, upon consideration of the City's motion for judgment on the pleadings and Drexel University's answer thereto, it is hereby ordered and decreed that said motion is granted in favor of additional defendant City of Philadelphia.