**Linda J. MILLER, Administratrix of the Estate of her daughter, Robin M. Miller, Deceased, and Bruce A. Johnston, Jr.**

v.

**UNITED STATES of America.**

Civ. A. No. 81–916.

United States District Court,
E. D. Pennsylvania.

Jan. 20, 1982.

Benedict A. Casey, Philadelphia, Pa., for plaintiffs.

Edward Borden, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiffs, Bruce A. Johnston, Jr., a government informant, and Linda J. Miller, the administratrix of the estate of Robin M. Miller, filed this action under the Federal Tort Claims Act, 28 U.S.C. § 1346 (FTCA), contending that Johnston's injuries and Miller's death resulted from the government's negligence in failing to provide them with police protection. The government moves to dismiss for lack of subject matter jurisdiction, F.R.Civ.P. 12(b)(1), contending that this action is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), and on the ground that plaintiffs have failed adequately to allege the element of legal causation and, therefore, have failed to state a claim upon which relief can be granted, F.R.Civ.P. 12(b)(6).

Accepting as true the well-pleaded facts of the complaint, as I must on this motion to dismiss, they are: Bruce A. Johnston, Jr., because of his relationship with his girl friend, Robin M. Miller, was cooperating with the government in its investigation of Bruce Johnston, Sr.'s criminal organization. During the course of obtaining information from Bruce Johnston, Jr., and to induce his further cooperation, government agents promised "the federal protection program to Bruce Johnston, Jr. for both he (*sic*) and . . . Robin Miller." (Amended Complaint ¶ 5). The government knew of the senior Johnston's organization's reputation for "assignation and murder" and, therefore, knew of the risk created by Bruce Johnston, Jr.'s cooperation with federal authorities. The risk to Miller stemmed from her relationship with Bruce Johnston, Jr. and the fact that she was "the principal reason for Johnston's cooperation with the government." (Amended Complaint ¶ 6). The government did not furnish the promised protection. On or around November 13, 1979, Bruce Johnston, Jr. suffered serious injuries, and Robin Miller died, from gunshot wounds. Plaintiffs contend that the government was negligent for failing to provide protection and that its negligence caused Johnston's injuries and Miller's death. Administrative claims were filed as required by the FTCA, 28 U.S.C. § 2675, and this action followed.

(a) *Discretionary Function*

The threshold question is whether this action is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Because the Third Circuit has held this exception to be jurisdictional, *Griffin v. United States,* 500 F.2d 1059, 1063 (3d Cir. 1974), I must address its applicability before considering any of the government's other arguments. *Blessing v. United States,* 447 F.Supp. 1160, 1167 (E.D. Pa. 1978).

28 U.S.C. § 2680(a) provides:

The provisions of this chapter and section 1346(b) [the FTCA jurisdictional statute] of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The instant case involves the second clause of the exception which bars all claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." It is the government's position that whether or not to provide protection to Bruce Johnston, Jr. and Robin Miller is a decision protected by this clause.

Determining what decisions are or are not protected by the discretionary function exception is not an easy task. *Bernitsky v. United States,* 620 F.2d 948, 951 (3d Cir. 1980). As Judge Becker pointed out in *Blessing v. United States, supra,* 447 F.Supp. 1180, the courts have had difficulty in defining what types of decisions fall within the exception and "[r]ather than [being] a seamless web . . . the law in this area is a patchwork quilt."

The only Supreme Court case expressly discussing this issue is *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), in which the Court stated:

The "discretion" protected by the section is not that of the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law.

. . . .

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initia-

tion of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government cannot be actionable.

*Dalehite*'s interpretation of the scope of the discretionary function exception was considered by the Third Circuit Court of Appeals in *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974). There, plaintiffs contended that the government, through the Division of Biologic Standards (DBS) of the Department of Health, Education and Welfare, was negligent in approving polio vaccine which caused serious damage when ingested. Regulations provided that vaccine was to be approved by DBS unless neurovirulence of the batch exceeded the National Institute of Health "reference strain". Five criteria of neurovirulence were enumerated in the regulation. DBS had interpreted the regulation as allowing a weighing of all five factors in determining neurovirulence. The court accepted this interpretation of the regulation but still held that DBS' actions in weighing the relevant factors were not protected by the discretionary function exception. The court refused to construe the above quoted language in *Dalehite* as protecting all exercises of governmental judgment, rather, it noted that the decisions held discretionary in *Dalehite*, "involved, at minimum, some consideration as to the feasibility or practicability of Government programs.... Such decisions involved considerations of public policy, calling for a balance of such factors as cost of Government programs against the potential benefit." *Id.* at 1064. Accordingly, the court interpreted the exception as covering only those exercises of judgment which call for policy considerations. *Id.* at 1064. *See Downs v. United States*, 522 F.2d 990, 997 (6th Cir. 1975) (exception encompasses only those decisions which entail the formulation of government policy). DBS' decision to approve the vaccine in *Griffin* was not such a decision because it only

called for a judgmental determination as to the degree to which each of the enumerated criteria indicated neurovirulence.... The judgment, however, was that of a professional measuring neurovirulence. It was not that of a policymaker promulgating regulations by balancing competing policy considerations in determining the public interest. Neither was it a policy planning decision nor a determination of the feasibility or practicability of a government program. At issue was a scientific, but not policy-making determination as to whether each of the criteria listed in the regulation was met and the extent to which each such factor accurately indicated neurovirulence. DBS' responsibility was limited to merely executing the policy judgments of the Surgeon General.

500 F.2d at 1066. Accordingly, the court held that the government "may be liable where its employees, in carrying out their duties, fail to conform to pre-existing statutory and regulatory requirements." *Id.* at 1069. In this circuit, therefore, the court's inquiry "must be directed to the nature of the judgment which must be made" in reaching a particular decision. *Bernitsky v. United States*, 620 F.2d 948, 953 (3d Cir. 1980).

Turning to the instant case, the government, of course, contends that determining whether to provide informants with protection is a decision laden with policy considerations. It argues that its only authority to provide protection to witnesses or informants stems from the Federal Witness Protection Program. *See* 18 U.S.C. prec. § 3481. Pointing to the formal policy promulgated by the Justice Department pursuant to the statutory authority, the government contends that the factors enumerated in that policy illustrate the policy making nature of the determination. Further, it argues that the decision whether to provide protection directly affects the feasibility of the Federal Witness Protection Program since it cannot afford to protect every informant who asks for such protection. Finally, it argues that deciding whether or

not to provide protection is inherently related to the government's prosecutorial discretion, one which is clearly protected by the exception. *Smith v. United States*, 375 F.2d 243, 247 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). *See also Redmond v. United States*, 518 F.2d 811 (7th Cir. 1975). Plaintiffs do not directly dispute the government's position in this regard, but they do argue that the Federal Witness Protection Program is not the sole source of duty to protect informants. They contend that the government has a common-law duty to protect informants, and that decisions made pursuant to that common law duty are not shielded by the discretionary function exception. The sole authority cited by plaintiffs for this proposition is *Swanner v. United States*, 309 F.Supp. 1183 (M.D. Ala. 1970).

▪ Although interesting, the arguments raised by the parties cannot be resolved on the barren record before me on this motion to dismiss. The government's argument that the decision whether or not to protect an informant is, as a matter of law, shielded by the discretionary function exception, presupposes that plaintiffs are challenging the actual decision whether or not to protect. Plaintiffs have alleged, however, that they were promised protection by government agents who were fully aware of the grave risk confronting plaintiff, and that the protection was not provided. From this allegation, the truth of which I must accept, I cannot rule out the possibility that the government did in fact make the decision to protect Johnston and Miller. Plaintiffs' complaint, therefore, can reasonably be construed as challenging the negligent execution of the decision to protect, and not as

challenging the decision itself. Even assuming the correctness of the government's argument that judicial review of the decision whether to protect is prohibited, as a matter of law, by the discretionary function exception, under *Griffin*, negligent execution of policy is not shielded by the exception, *see also Downs v. United States*, 522 F.2d 990 (6th Cir. 1973). Plaintiffs' complaint, therefore, is not subject to dismissal at this time.

Since I cannot dismiss plaintiffs' complaint for lack of jurisdiction at this time, I will not address the government's argument that the discretionary function exception, as a matter of law, shields the decision whether to protect an informant. I note, in passing, that there is no easy answer. As a general rule courts have held governmental entities to be immune from tort liability for failure to provide police protection because such decisions involve policy considerations which have been delegated to other branches of government.[1] On the other hand, courts have also recognized that, where the government enters into a special relationship with an individual, the government may not have any discretion as to whether to protect that individual.[2] At least two federal district courts have held that the government-informant relationship, may, under certain circumstances, give rise to a duty to protect and that the negligent performance of that duty is not shielded by the discretionary function exception. *See, e.g., Crain v. Krehbiel*, 443 F.Supp. 202, 214 (N.D. Cal. 1977); *Swanner v. United States*, 309 F. Supp. 1183 (M.D. Ala. 1970). *See also Leonhard v. United States*, 633 F.2d 599, 623 n.35 & 625 n.39 (2d Cir. 1980) (in

---

1. *See, e.g., Monarch Insurance Co. of Ohio v. District of Columbia*, 353 F. Supp. 1249, 1260 (D.D.C. 1973), *aff'd mem.* 497 F.2d 683 (D.C. Cir.), *cert. denied*, 419 U.S. 1021, 95 S.Ct. 497, 42 L.Ed.2d 295 (1974); *Chapman v. City of Philadelphia*, —— Pa.Super. ——, 434 A.2d 753 (1981); *Riss v. City of New York*, 22 N.Y.2d 579, 240 N.E.2d 860, 861–862, 293 N.Y.S.2d 897, 899 (1968). *See* generally Annot. Liability of Municipality or Other Governmental Unit for Failure to Provide Police Protection, 46 A.L. R.3d 1084 (1972 & Supp.); Prosser, Law of Torts § 131 at 979 & n.91 (4th ed. 1971).

2. *See, e.g., Peck v. United States*, 470 F. Supp. 1003, 1017 (S.D.N.Y. 1979); *Crain v. Krehbiel*, 443 F. Supp. 202, 214 (N.D. Cal. 1977); *Swanner v. United States, supra; Chapman v. City of Philadelphia*, —— Pa.Super. ——, 434 A.2d 753 (1981); *Gardner v. Village of Chicago Ridge*, 71 Ill.App.2d 373, 219 N.E.2d 147, 150 (1966); *Schuster v. City of New York*, 180 N.Y.S.2d 265 (1958). *See also Leonhard v. United States*, 633 F.2d 599, 625 n.39 (2d Cir. 1980).

footnotes the court recognized the possibility of a cause of action under the FTCA for failure to provide protection to an informant who faces a known risk). On fuller development of the facts, the instant case may conceivably fall within the scope of the duty to protect.

■ The government has raised some very interesting points, the most significant of which, and one which has not been directly considered by the courts before, is that the decision to protect is inherently bound up with its prosecutorial discretion, which is clearly shielded by the exception. These issues are best resolved on fully developed record. A court's jurisdictional inquiry, in determining whether a particular decision is shielded by the discretionary function exception, is limited to defining the nature of the decision being challenged. *See Bernitsky v. United States, supra,* 620 F.2d at 953. Considering the complexity of this analysis and the considerable difficulty it has occasioned among courts and commentators, *see id.* at 951, it is preferable to reach a decision on the basis of a concrete record rather than in the abstract.[3] Since, as the complaint now stands, there is jurisdiction if it is construed as challenging the negligent implementation of a decision to protect, the complaint is not barred by the discretionary function exception. *See Blessing v. United States, supra,* 447 F. Supp. at 1160. Discovery may disclose that, in fact, plaintiffs are challenging the actual decision whether to protect. That will set the proper stage for the government's jurisdictional argument that that decision is protected by the exception.

**3.** Although the government has provided the court with the Justice Department's formal policy pertaining to its Witness Protection Program, I have not considered that document on this motion to dismiss for lack of subject matter jurisdiction. While I note that a court may consider matters outside the pleadings in resolving a Rule 12(b)(1) motion and that it may weigh the evidence to determine if it has jurisdiction, *see Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891–892 (3d Cir. 1977); 2A Moore's Federal Practice

## (b) *Causation*

■ The government also seeks dismissal of the complaint under F.R.Civ.P. 12(b)(6) for failure to state a claim. It contends that plaintiffs have failed to sufficiently allege legal causation under Pennsylvania law which controls under the FTCA, 28 U.S.C. § 1346(b); *Blessing v. United States, supra,* 447 F. Supp. at 1164. The government argues that plaintiffs' claim is one under the so-called Good Samaritan Rule articulated in §§ 323 & 324(A) of the Restatement (Second) of Torts. The Restatement correctly states the rule as applied in Pennsylvania. *Evans v. Liberty Mutual Insurance Company,* 398 F.2d 665, 667 (3d Cir. 1968); *Blessing v. United States, supra,* 447 F.Supp. at 1187; *DeJesus v. Liberty Mutual Insurance Company,* 423 Pa. 198, 223 A.2d 849 (1966); *Hamil v. Bashline,* 224 Pa.Super. 407, 307 A.2d 57 (1973). These sections of the Restatement provide:

Section 323

*Negligent Performance of Undertaking to Render Services*

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Section 324

*Liability to Third Person for Negligent Performance of Undertaking*

¶ 12.09[3] & n. 29, I also note that fundamental fairness requires that the non-moving party be afforded the opportunity to conduct discovery so that he can, if possible, meet his burden of establishing jurisdiction. *See Mortensen, supra,* 549 F.2d at 892 n.18 (citing cases). *See also Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320, 1323 (3d Cir. 1972). Since no such opportunity was afforded plaintiff in the instant case, I have limited my inquiry solely to the question of whether lack of jurisdiction is apparent from the pleadings alone.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Under Pennsylvania law, the elements of increased harm or reliance go to the issue of whether the lack of due care was the proximate cause of plaintiffs' injuries. *Hamil v. Bashline, supra*, 307 A.2d at 61. Accordingly, under these sections of the Restatement, the absence of allegations indicating either reliance or increased harm makes the complaint legally insufficient because of the lack of allegations of proximate cause. *See Blessing v. United States, supra*, 447 F.Supp. at 1197–1198; *DeJesus v. Liberty Mutual Insurance Company*, 423 Pa. 198, 200, 223 A.2d 849 (1966). The government argues that since the complaint does not specifically contain such allegations, it must be dismissed.

■ The government's argument is unpersuasive for several reasons. First, liberally reading ¶¶ 5–7 of the complaint and drawing all inferences in favor of plaintiffs, they do arguably allege that the harm they suffered was occasioned by their reliance on the government's promise to provide protection. They allege that Johnston was induced to continue his cooperation by the promise to protect. Although plaintiffs do not specifically allege that, in reliance on the promise to protect, they did not take appropriate measures to protect themselves, it is reasonable to draw such an inference from the complaint. Further, it can also be reasonably inferred that Johnston's continued cooperation in light of the promise to protect, increased the risk of harm he and

Miller faced. Accordingly, I cannot say with the requisite degree of certainty that plaintiffs have failed to state a claim under the Good Samaritan doctrine.

Second, the government's reliance on *Blessing* and the Restatement's formulation of the Good Samaritan doctrine may be misplaced. By their terms, the cited sections of the Restatement require an actual undertaking of a task. As Judge Becker stated in *Blessing*:

> The foundational requirement of the Good Samaritan rule is that in order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully.

447 F. Supp. at 1188.

■ Here, although plaintiffs' claim can be construed as alleging that the government undertook to protect them and did so in a negligent manner, it can also be construed as contending that the alleged negligence was in the government's failure to provide Johnston and Miller with protection at all, in breach of the asserted common-law duty to protect informants recognized in *Swanner, supra*. If there is a legal duty to take affirmative action, the Good Samaritan doctrine does not apply since that doctrine, by its very name, requires that the actor voluntarily do something which he is not otherwise legally obligated to do. *See generally* Prosser, Law of Torts § 56 at 343–348 (4th ed. 1971).

■ Plaintiffs' claim, therefore, can be viewed as a straightforward common-law negligence claim rather than a Good Samaritan claim. Under Pennsylvania law, a claim of negligence is stated by alleging that there is a duty to protect, and that there has been a breach of that duty which was the proximate or legal cause of injury. *See Onufer v. Seven Springs Farm, Inc.*, 636 F.2d 46, 47 (3d Cir. 1980). Plaintiffs' allegation in paragraph 7 of the Amended Complaint that the government's negli-

**618**

gence resulted in injury to Johnston and death to Miller is sufficient to withstand a motion to dismiss under the Federal Rules of Civil Procedure. See F.R.Civ.P. Form 9. Accordingly, the government's motion to dismiss for failure to state a claim will be denied.