**Harold H. FLAMMIA,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 83–1597.

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1984.

Stolhandske, Simmons & Stolhandske, Cornel W. Walker, William F. Stolhandske, San Antonio, Tex., for plaintiff-appellant.

Lawrence J. Souza, Joseph E. Scuro, Jr., San Antonio, Tex., for amicus curiae San Antonio Police Officers Assn., et al.

Edward C. Prado, U.S. Atty., Raymond A. Nowak, Asst. U.S. Atty., San Antonio, Tex., for defendant-appellee.

Before POLITZ, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Harold H. Flammia, Jr., a San Antonio, Texas police officer, brought this action against the United States to recover damages for injuries he sustained when he was shot by Francisco Diaz-Tirce ("Diaz"), a Cuban national who was admitted into this country by the Immigration and Naturalization Service ("INS"). The district court determined that it lacked subject matter jurisdiction of appellant's claims in light of the discretionary function exemption to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). Finding this determination correct, we affirm the district court's decision.

In May, 1980, as a part of the Mariel boat lift, Diaz came to this country from Cuba, where he had been imprisoned on robbery charges for which he had served fifteen years of a thirty-year prison sen-

tence. Upon his entry into the United States, Diaz, along with thousands of other "boat people" from Cuba, was housed in temporary quarters at Fort Indian Town Gap, Pennsylvania while undergoing processing and awaiting sponsorship in this country. During processing Diaz advised INS officials regarding his robbery conviction and his imprisonment in Cuba. In January, 1981 Diaz was released to private sponsors in Texas, but this sponsorship was withdrawn by the sponsors less than a month later. There is no allegation that the INS knew of the withdrawal. No arrangement was made for a new sponsor. On June 23, 1981 Diaz was arrested in San Antonio for burglary and was sentenced to three years' probation. It is not alleged that the United States ever knew of either the arrest or sentencing of Diaz by Texas authorities. On January 7, 1982 appellant Flammia, a thirteen-year veteran of the San Antonio Police Department, was dispatched to investigate a burglary in progress. Appellant encountered Diaz at the scene and a shoot-out ensued, during which Diaz was killed and appellant seriously wounded. Appellant sought to allege a cause of action against the United States based on general negligence, claiming that various negligent and wrongful acts of the United States had been a proximate cause of the damages suffered by appellant. The allegedly negligent acts of the INS personnel included allowing Diaz to enter the United States; releasing Diaz from its care, custody, and control when it knew that Diaz was a felon convicted of a violent crime and had a propensity to commit a similar crime in the future; failing to maintain supervision over Diaz once he was released from INS custody; failing to notify federal and local law enforcement agencies that Diaz had a prior felony record; failing to deport Diaz when his sponsorship was withdrawn; failing to take Diaz into custody after he had been convicted of a felony in the United States.

In evaluating each of these actions in light of the discretionary function exemption, we are informed by the Supreme Court's recent decision in *United States v.*

*S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). There the Court emphasized that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Id.* at ——, 104 S.Ct. at 2765. The Court also stated that "whatever else the discretionary exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Id.* (footnote omitted).

With respect to the INS decisions to allow Diaz to enter the United States and thereafter to release him from its custody, on the basis of *Varig Airlines* we must reject appellant's attempt to distinguish between high-level decisions concerning the admission or release of Cuban refugees in general and the specific operational decision to admit and release Diaz. As the district court correctly determined, the INS has broad statutory discretion to parole into the United States foreign nationals (including discretion to release foreign nationals from detention), even when they might otherwise be excludable. *See* 8 U.S.C. §§ 1182(d)(5), 1157(c)(1); 8 C.F.R. § 207.3(b) (1984); 8 C.F.R. § 212.5 (1980). We view the language of *Varig Airlines* to dictate that the exemption under the Federal Tort Claims Act derived from this discretion extends to specific individual applications as well as to broad policies.

With respect to the release of Diaz by the INS, appellant admits that 8 C.F.R. § 207.2(d) (1984), requiring refugee applicants to be sponsored by a responsible person or organization, was not in effect at the time of the applicable events in this

case.[1] Appellant did not allege that the INS knew of the withdrawal of sponsorship, nor are (or were) there other regulations dealing with sponsorship beyond the concededly inapplicable 8 C.F.R. § 207.2. There may be humanitarian and foreign relations related reasons for the release of foreign nationals such as Diaz, and since in deciding to release Diaz the INS acted in an area committed to its discretion and in its role "as a regulator of the conduct of private individuals," *Varig Airlines,* —— U.S. at ——, 104 S.Ct. at 2765, it was immunized from tort liability.

 Finally, we agree with the district court that appellant's allegations demonstrate neither any duty on the part of the INS to notify law enforcement officials of Diaz's criminal record, nor that the INS lacked discretion not to deport Diaz after his 1981 conviction. We therefore affirm the district court's order dismissing the case.[2]

AFFIRMED.

---

1. Even had it been in force, the regulation declares merely as follows:

 "Each applicant must be sponsored by a responsible person or organization. Transportation for the applicant from his/her present abode to the place of resettlement in the United States must be guaranteed by the sponsor. The application for refugee status will not be approved until the Service receives an acceptable sponsorship agreement and guaranty of transportation in behalf of the applicant." *Id.*

2. *See Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); *Payton v. United States,* 679 F.2d 475 (5th Cir.1982) (en banc); *Nevin v. United States,* 696 F.2d 1229, 1231 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983).