### Ronald POOLER

v.

### UNITED STATES of America.

### Civ. No. 85–0035.

United States District Court, E.D. Pennsylvania.

May 16, 1985.

Edward L. McCandless, Jr., Steinberg & Girsh, Philadelphia, Pa., for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

---

6. Plaintiff has not suggested that defendants waived any notice requirement.

## OPINION

LUONGO, Chief Judge.

This is an action against the government under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq. The gravamen of plaintiff's complaint is that he was falsely arrested on drug charges as a result of a negligent investigation conducted by the Veterans Administration (VA). The government has moved to dismiss the complaint under the discretionary function exception to the FTCA. Because I conclude that the decision to initiate criminal charges and the decision as to the proper means of investigating suspected criminal conduct are discretionary functions within the meaning of 28 U.S.C. § 2680(a), I will grant the motion to dismiss.

### I.

Plaintiff Ronald Pooler was employed at the Veterans Administration Medical Center in Coatesville, Pennsylvania until the time of his arrest in March, 1982. In the year preceding plaintiff's arrest the VA conducted an investigation into reports of the distribution and use of controlled substances at the Medical Center. When the inquiry proved unsuccessful, VA officials decided to attempt an undercover operation using the services of an informant.

VA officials who were involved in the decision to implement an undercover operation were: James L.G. Parsons, II, Director of the Medical Center, Peter Mango, Chief of Police at the Medical Center, and Curtis Kimmel, a VA detective. In December, 1981, Mango advised Parsons of his belief that a drug problem existed at the Medical Center. Parsons approved Mango's request for authorization to conduct an investigation, and Mango assigned Detective Kimmel to conduct the probe.

Plaintiff alleges that Kimmel's approach to the investigation was deficient in several respects. Plaintiff alleges that Kimmel selected for use as an informant a VA employee, John Cantrell, who had acknowledged past drug involvement and who exhibited less than average mental capacity.

It is further alleged that during the course of the investigation, Kimmel failed to instruct the informant as to which individuals he should observe and as to methods of avoiding violating the rights of such persons. Plaintiff also claims that Kimmel failed to obtain corroborative evidence with respect to Cantrell's allegation that plaintiff sold him drugs: Kimmel did not personally observe, nor did he direct others to witness, the alleged transactions between plaintiff and the informer.

As a result of the undercover investigation, Kimmel filed two criminal complaints against plaintiff on March 18, 1982. A district justice found probable cause and issued a warrant for plaintiff's arrest. After his arrest, plaintiff was required to post bail to obtain release. The charges against plaintiff were *nolle prossed* by the Chester County District Attorney on August 24, 1982. Plaintiff denies participation in the alleged drug transactions.

### II.

The discretionary function exception to the FTCA bars suit against the United States on:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). On the few occasions the Supreme Court has considered the discretionary function exception, the Court has accorded the exception a broad reading. In *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Court rejected claims arising out of a disastrous explosion of ammonium nitrate fertilizer intended for shipment to Europe in the aftermath of World War II. Declining to establish a precise standard for application of the exception, the Court

ruled that the exception covered at least "the initiation of programs and activities." 346 U.S. at 35, 73 S.Ct. at 968. Moreover, the Court held the exception applicable to "determinations made by executives or administrators in establishing plans, specifications, or schedules of operations." *Id.* at 35–36, 73 S.Ct. at 968 (footnote omitted). As the Court explained:

> Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

*Id.* at 36, 73 S.Ct. at 968 (footnote omitted). Applying that standard to the facts before it, the Court ruled that all of the government's alleged acts of negligence—including *inter alia* the improper labeling of fertilizer bags—were discretionary functions. The Court reasoned that the challenged decisions "were all responsibly made at a planning rather than operational level and involved considerations more or less important to the practicability of the Government's fertilizer program." *Id.* at 42, 73 S.Ct. at 971.

The Supreme Court recently reaffirmed the principles of *Dalehite v. United States* in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)* — U.S. —, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). There the Court ruled that the exception barred actions based on the Federal Aviation Administration's certification of aircraft for commercial use. The Court held that the decision to adopt a "spot check" system for reviewing a manufacturer's compliance with applicable regulations was a discretionary function. The Court heavily emphasized the discretionary character of an agency's regulation of private conduct:

> When an agency determines the extent to which it will supervise the safety pro-

cedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding.

104 S.Ct. at 2768. In short, the Court found that the "nature and quality" of the decision to adopt a "spot check" system classified such a decision as a discretionary function.

The Court also ruled that the acts of FAA employees implementing the spot check program were protected by the exception. The Court noted that individuals assigned to review a given manufacturer's compliance with applicable safety standards were specifically empowered to decide the extent to which the manufacturer could be trusted to have observed such regulations.

In this circuit, our court of appeals recently examined the scope of the discretionary function exception in *General Public Utilities Corporation v. United States,* 745 F.2d 239 (3d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985). In that case, the court held barred the claims of owners of the Three Mile Island nuclear plant against the government because of the Nuclear Regulatory Commission's failure to warn them of equipment defects. The court reasoned that the character of the function performed by the agency—regulation of the nuclear industry after assessment of information gathered from nuclear facilities—required that the agency's decision whether to report specific data be held a discretionary function. The court emphasized that the nature of the governmental activity, and not the availability of other courses of action, determines whether the conduct is discretionary.

The exemption from the Tort Claims Act is based on the nature of the governmental discretionary function, not whether there is an option to choose. Regulatory activities are within the exemption, not because alternatives exist in particular circumstances, but because of the fundamental character of the role assigned to the agency.

If a government employee performing a discretionary function acts negligently, the exemption remains applicable even though the activity constitutes an abuse of discretion. As the statute itself provides, discretionary functions are exempt "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

745 F.2d at 245.

### III.

Apart from general pronouncements on the subject of the discretionary function exception, the courts have provided little insight into application of the exception to the investigative conduct of law enforcement officials. In this circuit, *Bernitsky v. United States,* 620 F.2d 948 (3d Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980), is the most significant appellate ruling. In *Bernitsky,* a coal company brought suit after portions of its mine collapsed, causing substantial damage to equipment left in the mine. At the time of the collapse, the company was forbidden access to the mine or its equipment because of a Withdrawal Order issued by the Mining Enforcement and Safety Administration. The Withdrawal Order was based on a Notice of Violation regarding toilet facilities which the company had failed to remedy for seven months despite three extensions of time. The company claimed that closure of the mine was unreasonable under the circumstances, and brought suit under the FTCA.

The court of appeals held the suit barred under the discretionary function exception. The court noted that applicable regulations vested discretion in mine inspectors to determine the time during which a violation (other than one posing imminent danger) must be abated. In view of the "judgmental character" of the decision as to a reasonable length of time to correct a violation, the court declined to substitute its judgment for that of the mine safety officials. The court concluded:

Decision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments.

620 F.2d at 955.

Following *Bernitsky,* the court in *Amato v. United States,* 549 F.Supp. 863 (D.N.J. 1982), *aff'd mem.,* 729 F.2d 1445 (1984), ruled that FBI agents were acting within the scope of the exception when they delayed arresting members of a conspiracy until the suspects committed a bank robbery. Applying the planning level/operational level distinction derived from *Dalehite v. United States* and followed by decisions of our court of appeals, the court concluded that the agents were engaged in planning activity when they declined to charge the suspects with lesser offenses on the basis of inconclusive evidence available before the robbery.

A similar conclusion was reached by the Court of Appeals for the Fifth Circuit in *Flammia v. United States,* 739 F.2d 202 (5th Cir.1984). The Fifth Circuit, with the benefit of the Supreme Court's *Varig* decision, ruled that the decision of the Immigration and Naturalization Service to admit a Cuban national into this country was discretionary. The court deemed the relevant inquiry to be whether the challenged conduct was of a "nature and quality that Congress intended to shield from tort liability." 739 F.2d at 204, *quoting Varig,* 104 S.Ct. at 2765. Finding that the INS has "broad statutory discretion" to admit excludable foreign nationals into this country, the court ruled that *Varig* precluded judicial review of the agency's decision. The court also ruled that *Varig* precluded liability based on the "specific operational decision" to admit the foreign national involved in *Flammia.* Having characterized the function of deciding whether to admit foreign nationals as discretionary, the court

rejected the attempt to draw a distinction between high-level decisions and specific operational decisions. In this regard, the Fifth Circuit took heed of the Supreme Court's declaration that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig*, 104 S.Ct. at 2765.

Research has disclosed, however, that circuit court treatment of law enforcement officers' conduct has not been uniform. For example in *Downs v. United States*, 522 F.2d 990 (6th Cir.1975), the court held that the exception did not apply to a tort suit which challenged the manner in which FBI agents responded to a hijacking. The court limited application of the exception to (1) cases in which government agents, acting with due care, implement a statute or regulation and (2) cases in which government agents formulate policy. To determine whether government agents are formulating policy, the court looked to the nature and quality of judgment at issue, not to the governmental function for which such a decision was made.

Applying that test to the case before it, the Sixth Circuit ruled that the FBI agents were not formulating government policy when they decided to disable a captive aircraft with hostages on board. The court reasoned that governmental policy had already been articulated in an FBI handbook.

The Sixth Circuit found support for its conclusion in civil rights cases reviewing the legality of police searches, seizures, and arrests. From that body of precedent the court deduced that when a response to a particular situation does not have policy overtones, courts have "scrutinized the day-to-day activities of law enforcement officers." *Downs*, 522 F.2d at 997. The court rejected the argument that the making of an arrest is a discretionary act, reasoning that, as in civil rights cases, "the fiction that making an arrest is not 'discretionary' is maintained because protection of personal liberties is thought to outweigh the danger of less effective law enforce-

ment out of fear of personal tort liability." *Id.* at 998.

Relying on *Downs*, the District Court for the Eastern District of Michigan has ruled that the exception does not bar suit for a death caused by an informant in the FBI's control. In *Liuzzo v. United States*, 508 F.Supp. 923 (E.D.Mich.1981), the plaintiffs alleged that their mother was killed because the FBI recruited, but failed to train or supervise, an informant with known dangerous propensities. The plaintiffs also alleged that the FBI had notice of, and authorized the informant, a Ku Klux Klan member, to provoke or participate in violence toward civil rights protesters such as the plaintiffs' decedent.

On a motion to dismiss, the court held that the alleged negligence of the FBI officers in implementing the Bureau's policy regarding informants was the sort of day-to-day judgment that *Downs* held outside the discretionary function exception. Because the agents were not formulating policy when they responded to the various circumstances presented, the exception did not preclude judicial review of the propriety of their handling of the informant.

## IV.

To decide whether the discretionary function exception bars suit for the alleged negligence of VA officials in the case before me, I must consider whether the challenged conduct is "of the nature and quality that Congress intended to shield from tort liability." *Varig*, 104 S.Ct. at 2765. After considering the facts of this case in light of the Supreme Court's recent pronouncement, the pre-*Varig* caselaw, and particularly our court of appeals' decision in *Bernitsky*, I conclude that the challenged conduct is a discretionary function.

I note at the outset that this lawsuit involves a challenge to both the officials' investigative techniques and their decision to initiate criminal charges against the plaintiff. The latter aspect of the officials' behavior has traditionally been considered a quintessentially discretionary act. *Smith v. United States*, 375 F.2d 243 (5th Cir.),

*cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967); *United States v. Faneca,* 332 F.2d 872 (5th Cir.1964), *cert. denied,* 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965); *Accardi v. United States,* 435 F.2d 1239 (3d Cir.1970); *Blessing v. United States,* 447 F.Supp. 1160, 1179 & n. 28 (E.D.Pa.1978). Nothing in *Varig* or other recent cases suggests that filing the criminal complaint was not a discretionary act, thus I hold that plaintiff's complaint must be dismissed to the extent it challenges the decision to bring such charges.

I conclude also that the VA officials' conduct during the investigation, including their decision to accept the services of an informant with limited mental capacity, is a discretionary function. As the Third Circuit specifically ruled in *Bernitsky:* "Decision making as to investigation and enforcement, particularly where there are different types of enforcement action available, are discretionary judgments." 620 F.2d at 955. While it can be said that the mine safety inspectors in *Bernitsky* enjoyed slightly broader discretion to decide appropriate enforcement action, the nature of the governmental conduct—investigation and enforcement of regulations of private conduct—is the same as in the instant case.[1]

Further support for this position is found in *Varig* and the Third Circuit's analysis of *Varig* in *General Public Utilities Corporation v. United States, supra.* In *Varig,* the Supreme Court made clear that the governing inquiry is whether the governmental function pursued through an allegedly negligent decision is discretionary. With respect to the FAA's decision as to

the extent it would oversee private manufacturers' compliance with safety standards, the Court ruled that the regulatory character of the challenged conduct classified it as a discretionary function. Similarly, in *General .Public Utilities,* the court emphasized that the exception "is based on the nature of the governmental discretionary function," and is not forfeited by the negligence of an employee performing such a function. 745 F.2d at 245. The court then went on to hold that the Nuclear Regulatory Commission's regulatory function was a discretionary one.

The same reasoning applies to the VA's role as regulator of the conduct of persons on VA premises. Congress has authorized the Administrator of Veterans' Affairs, for the purpose of maintaining law and order on VA property, to establish rules and regulations, to employ special police, and to authorize such special officers to carry firearms. Special investigators, while on VA property, are authorized to enforce both rules and regulations promulgated by the VA and Federal statutes for the protection of persons and property. 38 U.S.C. § 218. With respect to conduct on VA property, therefore, the VA is entitled to the range of discretion properly accorded other law enforcement agencies.

▌ I conclude, moreover, that when seeking to enforce a criminal statute through the use of an informant, law enforcement agencies are exercising a discretionary function under the *Varig* formulation. Although civil rights litigation has compelled the courts to review police conduct for the purpose of protecting individual rights, the judiciary's limited role as Constitutional guardian does not reflect an

---

1. My decision in *Miller v. United States,* 530 F.Supp. 611 (E.D.Pa.1982), is not to the contrary. In that case, the government was sued for failure to place certain persons in the Federal Witness Protection Program. The government moved to dismiss the complaint under the discretionary function exception. I denied the motion because the complaint alleged that the government had made the decision to protect those individuals, but that government agents negligently failed to execute that decision. In addition, because of the then-undeveloped state

of the record, I declined to resolve the merits of the government's argument that the decision whether to protect a witness is inherently bound up with the discretionary function of the prosecutor. I note that at a later stage of the *Miller* litigation, Judge Lord ruled that the developed record did not support the plaintiffs' assertion that the government had decided to protect individuals. *Miller v. United States,* 561 F.Supp. 1129, 1131 (E.D.Pa.1983), *aff'd mem.,* 729 F.2d 1448 (3d Cir.1984).

institutional competence to weigh risks attendant to the various methods of ferreting out crime. Plaintiff's suggestion that law enforcement agencies should decline to employ informants of questionable physical, mental, or moral condition is particularly suspect. On countless occasions, the government has used the testimony of admitted criminals, perjurers, and drug abusers to obtain the conviction of the informants' former cohorts. To require that the government rely only upon witnesses of sterling character would intolerably impede the government's law enforcement effort. In the instant case, it makes no difference that the decision to employ Mr. Cantrell was not made by high-level administrators; the status of the decisionmakers does not alter the basic character of their judgment, a determination of the appropriate means of law enforcement.

Plaintiff's final contention, raised at oral argument, is that he is entitled to relief under the "investigative or law enforcement officer" proviso of 28 U.S.C. § 2680(h). Section 2680(h) excepts from the FTCA:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

 As the Court of Appeals for the District of Columbia Circuit has already ruled, however, § 2680(a) bars suit with respect to discretionary governmental functions even if the discretionary conduct would constitute a tort covered by the proviso to § 2680(h). *Gray v. Bell,* 712 F.2d 490, 507–508 (D.C.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Plaintiff's argument that the holding of *Gray v. Bell* should be rejected is not convincing. Although the instant case demonstrates that some activities of law enforcement officers are discretionary functions, it is not necessary to construe the proviso to § 2680(h) as a *pro tanto* repeal of the discretionary function exception to give the proviso its intended effect. Under the interpretation advanced by the District of Columbia Circuit, which I follow, the prime target of the proviso—violation of constitutional rights by law enforcement officers—remains actionable.[2]

In short, I hold that both the VA officials' decision as to the proper investigative techniques and their determination to initiate criminal charges against the plaintiff are discretionary governmental functions. Because plaintiff's complaint is barred by the discretionary function exception, this court lacks jurisdiction over the case. *Griffin v. United States,* 500 F.2d 1059, 1063 (3d Cir.1974). I will therefore dismiss plaintiff's complaint.

---

**2.** At oral argument, plaintiff made reference to footnote nine of the Supreme Court's opinion in *Kosak v. United States,* — U.S. —, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984). Plaintiff's reference is unhelpful. In that footnote, the Court, in the context of a discussion of § 2680(c), merely stated that the exceptions to the FTCA should be interpreted according to their language and purpose, and not as narrow exceptions to the broadly-construed principle of sovereign immunity. The Supreme Court did not suggest that it rejected the Third Circuit's treatment of the FTCA entirely, particularly in view of the Court's affirmance of the Third Circuit's *Kosak* decision.