**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2796
_____

JOHN BRADLEY PETERS, SR.,
                                        Appellant

v.

CHIEF JASON BROWN; SARGEANT KEVIN BICKLE;
OFFICER WILLIAM GALLAGHER; OFFICER ANTHONY SPADER;
DOCTOR HOSNY MIKHAIL; JEFFERSON COUNTY;
WARDEN THOMAS ELBELD; CHERYL ADAMS;
BROOKVILLE BOROUGH

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-16-cv-00260)
Magistrate Judge: Lisa P. Lenihan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2019

Before: MCKEE, COWEN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 30, 2019)
_____

OPINION*
_____

PER CURIAM

    John Bradley Peters appeals from orders dismissing his complaint and amended

complaint against certain defendants and granting summary judgment to the remaining

defendants and denying reconsideration.  For the reasons that follow, we will affirm.

Peters filed a pro se civil rights complaint, and later an amended complaint, pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Pennsylvania against numerous defendants. Peters alleged that the defendants violated his constitutional rights in connection with his arrest on March 5, 2014, and he sought money damages.

On the night of the arrest, Peters' wife Stacey called 911 after an intoxicated Peters threatened to shoot her. The 911 tape revealed the following:

911 OPERATOR: 911, what is your emergency?

MRS. PETERS: 25 Grant Street, Brookville, PA

*******************

911 OPERATOR: Okay. Your name?

MRS. PETERS: Stacey Peters.

911 OPERATOR: And the phone number that you are calling from?

MRS. PETERS: 648-1793. Please hurry up.

911 OPERATOR: What is going on there?

MRS. PETERS: My husband is drunk, and he's smacking everybody around, my kids and me. Please hurry up.

*******************

911 OPERATOR: Does he have any weapons?

MRS. PETERS: No, but he threatened to shoot me.

911 OPERATOR: Okay. Are there any guns in the house?

MRS. PETERS: Yes.

********************

2

911 OPERATOR: Are you in a safe location?

MRS. PETERS: Yes, my son just broke the door in.

911 OPERATOR: Okay.  Do you need an ambulance?

MRS. PETERS: No.

911 OPERATOR: Does anybody out there need an ambulance?

MRS. PETERS: No.

911 OPERATOR: Okay.  My partner does have the paramedics -- or I'm
sorry, the police coming [sic].  Do you want me to stay on the line until
they get there?

MRS. PETERS: Yes.

**********************

911 OPERATOR: Okay.  And you are in a safe location?

MRS. PETERS: Yeah, I'm in the kitchen.

911 OPERATOR: What about your sons?  Are they in a safe location?

MRS. PETERS: No, they're fighting with him.

************************

911 OPERATOR: And are you sure you don't need an ambulance?

MRS. PETERS: No.

Defendants' Statement of Material Facts, at ¶ 16.[1]

At 10:27 p.m., Sergeant Kevin Bickle and Officer William Gallagher of the
Brookville Borough police were dispatched to the Peters' residence.  After being told that

---

[1] The 911 tape was played at Mrs. Peters' deposition.

3

he would be arrested under Pennsylvania's domestic violence laws, Peters became agitated and combative and resisted arrest. He struck Sergeant Bickle with his fist, and, in response, Officer Gallagher punched Peters in the face. Bickle and Gallagher then brought Peters to the ground and handcuffed him behind his back. The officers called for back-up from Brookville Chief of Police Jason Brown. The Jefferson County Emergency Medical Service also was called to the home. When Chief Brown arrived, he knelt on Peters' back at the base of his neck to subdue him. When the paramedics arrived shortly thereafter, they found Peters to be "conscious, agitated and combative."

Peters was taken by ambulance to the Brookville Hospital emergency room, where he was evaluated. Mrs. Peters, who also came to the hospital, told hospital personnel that Peters had fallen down 13 steps and had hit his head prior to the time when the police were called. Peters was taken for a CT scan, but after that test was completed, he was cleared by Dr. Hosny Mikhail for transport to jail. Peters then was taken to the Jefferson County jail on March 6, 2014. At the jail, Peters requested medical care from Correctional Officer Anthony Spader, but the request was denied. Peters was charged with aggravated assault of a police officer, in violation of 18 Pa. Cons. Stat. Ann. § 2702(a), and released on bail.

Prior to the filing of the amended complaint, Brookville Hospital was dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Peters did not provide a certificate of merit in support of his claim of corporate medical negligence. In his amended complaint, Peters alleged that Cheryl Adams, R.N., a nurse at Brookville Hospital, inaccurately documented in the medical records that his cardiac rhythms were normal, among other claims, and thus was deliberately indifferent to his medical needs. Adams was dismissed

4

pursuant to Rule 12(b)(6) because she was not acting under color of law when she provided nursing services to Peters. Dr. Mikhail eventually was dismissed "without prejudice" pursuant to Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984), when Peters was unable to effectuate service after the case had been pending for almost two years.

With respect to the remaining defendants, Peters alleged that Sergeant Bickle, Officer Gallagher and Chief Brown used excessive force in arresting him, and were deliberately indifferent to his need for medical care. Specifically, Peters alleged that Chief Brown knelt on his neck for 23 minutes, making it difficult for him to breathe. Peters denied that he was intoxicated at the time of his arrest, and alleged that he was instead combative because he was in need of medical assistance from his fall. The claim against the Jefferson County jail defendants also alleged deliberate indifference to Peters' serious medical needs.

The Jefferson County defendants, including Correctional Officer Spader and Warden Thomas Elbel, moved to dismiss the complaint, and, in an order entered on August 22, 2017, the District Court dismissed the complaint and amended complaint. Following discovery, the Brookville police defendants, including Sergeant Bickle, Officer Gallagher and Chief Brown, moved for summary judgment, Fed. R. Civ. P. 56(a). In an order entered on June 12, 2018, the Magistrate Judge granted summary judgment to

the Brookville defendants.[2]  In an order entered on July 11, 2018, the Magistrate Judge denied Peters' timely filed motion for reconsideration.

Peters timely appeals pro se five orders: the three orders dismissing his case as to the Jefferson County defendants, Nurse Adams, and Dr. Mikhail; and the two orders granting summary judgment to the Brookville police defendants and denying reconsideration.  Fed. R. App. P. 3(c)(1)(B) ("The notice of appeal must: *** (B) designate the judgment, order, or part thereof being appealed[.]").

We have jurisdiction under 28 U.S.C. § 1291.  In his Informal Brief, Peters contends in the main that he was not intoxicated and that his combative behavior was due to a head injury suffered when he fell down the stairs.  He contends that Officer Gallagher thus should not have punched him, that Chief Brown, a large man, should not have kneeled on his neck, that Nurse Adams did not convey the seriousness of his medical condition to hospital staff, that Dr. Mikhail should not have cleared him for jail, and that Correctional Officer Spader should have arranged for him to receive medical care at the jail.

We will affirm.  We "are free" to affirm the judgment "on any basis which finds support in the record."  Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980).  The complaint against Dr. Mikhail was properly dismissed without prejudice because he was never properly served.  Peters was not able to locate him and supply the Court with Dr. Mikhail's address, though he had nearly two years to do so, Fed. R. Civ. P. 4(m) ("If

---

[2] After initially proceeding before a U.S District Judge, the parties consented to have a U.S. Magistrate Judge conduct all proceedings, including trial, pursuant to 28 U.S.C. § 636(c)(1).

6

a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant[.]").[3]

We exercise plenary review over a Rule 12(b)(6) dismissal. See Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001). A Rule 12(b)(6) motion tests the sufficiency of the factual allegations contained in the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A motion to dismiss will be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a dismissal, we look for "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of" a claim for relief. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

Pretrial detainees are entitled to the protections of the Due Process clause. Hubbard v. Taylor, 399 F.3d 150, 157-58 (3d Cir. 2005). We have found it constitutionally sufficient, however, to analyze pretrial detainees' claims of inadequate medical care under the familiar deliberate indifference standard. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003). To act with deliberate indifference to serious medical needs, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), is to recklessly disregard a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 836 (1994). Because the standard is recklessness, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from

---

[3] A dismissal pursuant to Poulis is a dismissal with prejudice, 747 F.2d at 867-68, and the Magistrate Judge specifically dismissed the claims against Dr. Mikhail without prejudice.

7

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

With respect to Correctional Officer Spader, a nonmedical prison official is not deliberately indifferent to a pretrial detainee's serious medical needs when the pretrial detainee was recently under the care of medical experts and the official does not have a reason to believe or actual knowledge that those medical experts or their assistants mistreated or failed to treat the pretrial detainee. See Pearson v. Prison Health Service, 850 F.3d 526, 543 (3d Cir. 2017). See also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Officer Spader's conduct cannot amount to deliberate indifference given the short amount of time that Peters was in jail and the fact that a physician had recently examined him and cleared him for jail. Peters did not plausibly argue that Officer Spader had knowledge or reason to believe that Peters had not received proper medical care at Brookville Hospital. In addition, Warden Elbel is not alleged to have had personal involvement in the decision not to provide medical care to Peters during the brief period of time that he was detained prior to making bail. See Rode v. Dellacriprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (claim for deprivation of constitutionally protected right must be based on personal involvement of defendant in alleged misconduct). The municipal liability claim against Jefferson County necessarily fails because a municipal policy, practice or procedure could not have caused an employee to violate Peters' civil rights if there was no underlying constitutional violation by Officer Spader. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Accordingly, the Jefferson County defendants properly were dismissed from the case pursuant to Rule 12(b)(6).

8

Nurse Adams properly was dismissed from the case as well. In order to state a valid § 1983 claim, a plaintiff must allege that the defendant acted under color of law in violating his constitutional rights. See Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000). An individual acts under color of law when he exercises powers on behalf of the state or when he performs a function delegated by the state, for example. See Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). Nurse Adams is not a state actor for purposes of § 1983 merely because Peters was under arrest when the Brookville police officers brought him to the hospital for evaluation prior to taking him to jail. Peters failed to plausibly allege that Nurse Adams was anything other than an employee of Brookville Hospital, a private institution, when she evaluated Peters and allegedly failed to convey the seriousness of his medical condition to other hospital staff.

We turn then to the claims against the Brookville police defendants and the Magistrate Judge's summary judgment determination. Our review of an order granting summary judgment is *de novo*. See Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In addressing the defendants' motion, the Magistrate Judge was required to view the facts in the light most favorable to Peters and make all reasonable inferences in his favor, see Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor may a Magistrate Judge weigh the

evidence. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

On the other hand, the nonmoving party may not rest on mere allegations or denials, Fed. R. Civ. Pro. 56(e)(2), (3). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Peters was required, in opposing the Brookville police defendants' motion for summary judgment, to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing that there was a genuine issue for trial regarding the medical care he did or did not receive and the use of force in connection with his arrest. See Fed. R. Civ. P. 56(c) (setting forth requirements for supporting or opposing party's assertion that a fact cannot be or is genuinely disputed). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

One who is arrested by the police has a right to medical care for serious medical needs. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987). Peters alleged that the Brookville police defendants were deliberately indifferent to his serious medical needs by failing to tell hospital staff that he had fallen down steps, that he had been assaulted by the officers, and that he had a heart condition. Peters, however, deposed no witnesses and offered no evidence to support any claim concerning what the officers did or not tell hospital staff. More to the point, paramedics were called to the scene to attend to Peters, the officers took Peters to the hospital for an evaluation, Mrs. Peters, a certified nursing assistant, spoke freely with hospital staff concerning Peters' alleged fall and health history, hospital staff

10

independently assessed and evaluated Peters, Peters was taken for a CT scan of his head, which indicated no acute intracranial pathology, an EKG was completed, and Peters was medically cleared for jail. No rational trier of fact thus could find that the Brookville police defendants recklessly disregard a substantial risk of serious harm to Peters, Farmer, 511 U.S. at 836. Summary judgment on this issue was entirely proper.

To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a seizure -- his arrest -- was carried out in an unreasonable manner. See Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005); Curley v. Klem, 499 F.3d 199, 203 n.4 (3d Cir. 2007). The reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Courts evaluate the reasonableness of "a particular use of force ... from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Peters relied on the affidavits of his wife and sons in an effort to show a genuine issue for trial with respect to the alleged excessiveness of the Brookville police officers' conduct, particularly that of Chief Brown. In essence, Peters sought to show that, by the time that Chief Brown arrived on the scene, "he was already zip tied, handcuffed, cuffed to his waist…. He couldn't move at all, and there was no reason for Chief Brown to drop a knee on him the way he did." Deposition of Stacey Peters, N.T., at 50.

We have carefully considered the summary judgment record, including the sworn deposition testimony of Peters and his wife, and the affidavits of his sons, but, even

11

viewing the facts in the light most favorable to Peters and making all reasonable inferences in his favor, see Armbruster, 32 F.3d at 777, we are compelled to conclude, as did the Magistrate Judge, that no rational trier of fact could find that any of the Brookville police officers, including Chief Brown, used more force than was necessary to subdue Peters and effectuate his arrest. Mr. and Mrs. Peters had been drinking since the late afternoon; Mrs. Peters initially made the frantic call to 911 for help, telling the dispatcher that Peters was intoxicated and threatening; Peters assaulted Sergeant Bickle before Officer Gallagher threw his punch;[4] Chief Brown was summoned to the scene because his officers wanted additional assistance in restraining Peters;[5] and the paramedics could not have attended to Peters' alleged medical needs unless and until he was completely under control, which was finally accomplished as a result of Chief Brown's actions. Moreover, Peters never offered any medical evidence in support of his claim that he was injured. Accordingly, a jury could find nothing other than that the force used by Sergeant Bickle, Officer Gallagher and Chief Brown, force which brought Peters under control and did not harm Peters, was not excessive. The municipal liability claim against the Borough of Brookville fails because there was no underlying constitutional violation by the Brookville police defendants. See Heller, 475 U.S. at 799.

We thus uphold the order granting summary judgment to the Brookville police defendants.[6] Peters' motion for reconsideration was properly denied because he did not

---

[4] Peters would later plead guilty and serve close to two years in prison for assaulting Sergeant Bickle.

[5] Peters' blood alcohol content as measured at the hospital at 12:10 a.m. was .2494 g/dL.

[6] Peters' assertion in his reply brief that the defendants' summary judgment evidence was fabricated is frivolous.

show an intervening change in the law, new evidence, or a clear error of law. See Max's Seafood Café v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).

Last, Peters has filed a motion on appeal seeking our "review" of the order dismissing Brookville Hospital from the case, notwithstanding that he did not seek review of this order in his notice of appeal. Peters, in essence, seeks to add a new claim to his case that Brookville Hospital violated his rights under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(a). Here, neither the complaint nor amended complaint alleged a claim under EMTALA, and at no time in the proceedings below did Peters seek to add an EMTALA claim. We will deny the motion because the Federal Rules of Appellate Procedure do not authorize the amendment of a complaint to add a new claim once the case is on appeal. Generally, a complaint may only be amended prior to the entry of final judgment pursuant to Federal Rule of Civil Procedure 15.

For the foregoing reasons, we will affirm the orders dismissing the complaint and amended complaint against certain defendants and granting summary judgment to the remaining defendants and denying reconsideration. Appellant's motion requesting "review" of the order dismissing Brookville Hospital is denied.